# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3236

_____

St. Paul Fire and Marine Insurance   *
Company; St. Paul Guardian Insurance  *
Company,   *
  *
    Plaintiffs - Appellees,   *   Appeal from the United States
  *   District Court for the
    v.   *   District of Minnesota.
  *
Courtney Enterprises, Inc.,   *
  *
    Defendant - Appellant.   *

_____

Submitted: May 18, 2001

Filed: October 15, 2001

_____

Before LOKEN, ROSS, and FAGG, Circuit Judges.

_____

LOKEN, Circuit Judge.

From December 1989 to December 1996, St. Paul Fire and Marine Insurance Company ("St. Paul") provided workers compensation and general liability insurance, and St. Paul affiliates provided claims handling services, to Courtney Enterprises, Inc. of Houston, Texas ("Courtney"). In July 1999, St. Paul sent Courtney a $512,406 invoice for amounts due under this contractual relationship. When Courtney failed to pay and would not agree to arbitrate the dispute in Minnesota, St. Paul filed a petition to compel arbitration in the District of Minnesota. Courtney moved to

dismiss for lack of personal jurisdiction and now appeals the district court's[1] order granting St. Paul's petition. We have jurisdiction to review a final order compelling arbitration. See 9 U.S.C. § 16(a)(3); Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000). We affirm.

## I.

St. Paul's workers compensation and general liability policies provided that Courtney would reimburse St. Paul for the deductible portion of liability claims paid by St. Paul under the policies. For each policy period (typically one year), the parties entered into an additional agreement specifying the claims handling services St. Paul would provide and the terms and conditions governing the payment of amounts owed by Courtney under the policies and the claims handling agreement. The claims handling agreements do not expire until all policy claims are paid or discharged.

St. Paul's July 1999 invoice included debit and credit entries from six of the seven annual policy periods. Two of the entries, which accounted for more than the net amount that St. Paul claimed was owing ($512,406), were described as follows:

Fourth Incurred Loss Large Deductible Adjustment
Plan Term:     12/1/94 to 12/1/95
        Additional Amount Due The St. Paul                96,564
        1st, 2nd, 3rd Combined Large Deductible          482,081

Seventh Incurred Loss Retro & Deductible Adjustment
Plan Term:     12/1/91 to 12/1/92
        Return Amount Due the Insured                    (26,587)
        4th, 5th, 6th Combined Retro & Deductible         48,742

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

For the 1991-1992 policy year, the Claims Service Agreement between Courtney and St. Paul Risk Services, Inc. provided:

> All matters in dispute between [Courtney] and SPRS in relation to this Agreement, and whether arising during or after the period of this Agreement, shall be referred for arbitration in the following manner:
>
> \*    \*    \*    \*    \*
>
> c.    The matter shall be determined by arbitration conducted in the City of St. Paul, State of Minnesota . . . . The arbitrator(s) shall apply the substantive law of the State of Minnesota as the proper law of this Agreement.

For the 1994-1995 policy year, the Incurred Loss Deductible Agreement between Courtney and St. Paul provided for arbitration of disputes regarding "interpretation or application of any of the provisions of this Agreement." The agreement is "governed by the laws of the State of Minnesota" but does not specify Minnesota as the required forum for arbitration.

In response to St. Paul's petition to compel arbitration, Courtney filed a motion to dismiss for lack of personal jurisdiction, supported by an affidavit stating it has no other contacts with Minnesota, and an answer alleging that the "side agreement" to arbitrate the dispute in Minnesota is contrary to the Texas insurance laws and therefore unenforceable. St. Paul filed copies of the relevant contract documents and correspondence regarding the unpaid invoice. Courtney filed a copy of a letter from the Texas Department of Insurance advising that the Incurred Loss Deductible Agreement attached to St. Paul's petition was not the "large deductible endorsement" that St. Paul filed and the Department approved for use in workers compensation policies for Texas insureds.

-3-

Based on this record, the district court denied Courtney's motion to dismiss, concluding Courtney had sufficient contacts with Minnesota to give the court personal jurisdiction. The court granted St. Paul's petition to compel arbitration, declining to consider whether the underlying contracts are unenforceable because that issue goes to the merits of the dispute. Courtney appeals both rulings.

## II.

**A. Personal Jurisdiction.** The Supreme Court of Minnesota has construed the Minnesota long-arm statute as extending the personal jurisdiction of Minnesota courts as far as due process will allow. Therefore, the personal jurisdiction issue in this case turns on whether the district court's assertion of personal jurisdiction over Courtney offends the Due Process Clause of the Fourteenth Amendment. See, e.g., Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995), cert denied, 516 U.S. 1184 (1996). "To defeat a [pretrial] motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Of course, when the underlying action is a petition to compel arbitration, a trial is unlikely. That means the moving party must seek an evidentiary hearing if it wishes to challenge the factual underpinnings of the nonmoving party's prima facie case. Courtney did not request such a hearing.

St. Paul seeks to arbitrate Courtney's refusal to pay a July 1999 invoice. The invoice included an amount due for the "Plan Term" of December 1991 to December 1992. In the Claims Service Agreement in effect for that policy year, Courtney agreed to arbitrate disputes relating to the agreement "in the City of St. Paul, State of Minnesota." By agreeing to that forum selection clause, Courtney impliedly consented to be sued in Minnesota to compel arbitration of such disputes. "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." Dominium Austin

Partners, L.L.C., v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001); accord Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 527 (1st Cir.1985); Petrol Shipping Corp. v. Kingdom of Greece, 360 F.2d 103, 107 (2nd Cir.), cert denied, 385 U.S. 931 (1966).

Implying consent to personal jurisdiction from the forum selection clause in an agreement to arbitrate is necessary to implement the statutory requirement that an arbitration hearing must be held "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. When the agreement to arbitrate includes a forum selection clause, most courts have concluded that "only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4 [of the Federal Arbitration Act]." Management Recruiters Int'l v. Bloor, 129 F.3d 851, 854 (6th Cir. 1997). Thus, if the court in the selected forum did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable, contrary to the strong national policy in favor of arbitration.

Noting the fact that St. Paul only attached the 1994-1995 Incurred Loss Deductible Agreement to its petition to compel arbitration, Courtney argues the 1991-1992 Claims Service Agreement is irrelevant and therefore there is no implied consent to personal jurisdiction because the 1994-1995 agreement did not contain an arbitration forum selection clause. We disagree. St. Paul properly submitted the additional contract documents in opposing Courtney's personal jurisdiction motion. Read as a whole, the documents reflect a contract claim that is in part for amounts due under the 1991-1992 agreement. That is a more than adequate prima facie showing of Courtney's consent to personal jurisdiction. As Courtney did not request an evidentiary hearing to challenge this plain meaning of the contract documents, the

district court's denial of Courtney's motion to dismiss for lack of personal jurisdiction must be affirmed.[2]

**B. Arbitrability.**  In deciding whether to compel arbitration, a district court must determine whether the dispute is arbitrable, that is, within the scope of the agreement to arbitrate, unless the parties have clearly agreed to leave that issue to the arbitrator.  However, the court may not rule on the merits of any claim the parties have agreed to arbitrate.  See AT&T Tech. v. Communications Workers, 475 U.S. 643, 649-50 (1986).  In this regard, the court's focus is "the making of the agreement for arbitration," 9 U.S.C. § 4, not the entire underlying agreement.  For example, the court may consider whether there was fraud in the inducement of the arbitration clause but it may not consider a defense of fraud in the inducement of the underlying contract.  The latter issue goes to the merits of the dispute and is for the arbitrator.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-04 (1967).

Courtney argues that the agreement to arbitrate is invalid under the Texas insurance laws, which must be enforced by reason of the McCarran-Ferguson Act.[3]  Under Prima Paint, we must determine whether this defense goes to the issue of arbitrability or to the merits of the underlying contract claim.  If the Texas insurance laws forbid the arbitration of insurance disputes, that is a defense to arbitrability and

---

[2]The 1994-1995 Incurred Loss Deductible Agreement provided for arbitration and stated that it "shall be governed by the laws of the State of Minnesota."  We need not decide whether this agreement standing alone would support personal jurisdiction in Minnesota.  Given the overall course of dealing, it is clearly appropriate to compel arbitration of the entire dispute over the July 1999 invoice in the forum the parties selected for arbitration in the 1991-1992 Claims Service Agreement.

[3]"No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).

the Federal Arbitration Act would be "inversely preempted" by the McCarran-Ferguson Act. <u>See</u> <u>Standard Sec. Life Ins. Co. v. West</u>, No. 01-1223, 2001 WL 1175069 (8th Cir. Oct. 5, 2001) (applying Missouri law); <u>Mutual Reinsur. Bureau v. Great Plains Mutual Ins. Co.</u>, 969 F.2d 931 (10th Cir.) (applying Kansas law), <u>cert denied</u>, 506 U.S. 1001 (1992). But Courtney does not argue that Texas law prohibits the arbitration of insurance disputes. Indeed, St. Paul has cited cases establishing that Texas courts do enforce agreements to arbitrate insurance disputes, such as <u>In re Certain Underwriters at Lloyd's</u>, 18 S.W.2d 867, 872 (Tex. Civ. App. 2000).

Rather, Courtney's defense is that the claims handling agreements that are the basis for St. Paul's contract claim are unenforceable because they were not filed and approved under the Texas insurance laws. We agree with the district court that this defense goes to the merits of the underlying contract dispute. The Texas insurance laws, if applicable in this way, are not impaired by the agreement to arbitrate. Thus, the McCarran-Ferguson Act has no impact on the issue of arbitrability. <u>See</u> <u>Life of America Ins. Co. v. Aetna Life Ins. Co.</u>, 744 F.2d 409, 412-13 (5th Cir. 1984); <u>Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.</u>, 408 F.2d 606, 611 (2nd Cir. 1969). If Courtney's invalidity defense is sound, the dispute is arbitrable but St. Paul's claim may be unenforceable. We have no authority to address this invalidity issue, as the parties have agreed to submit it to arbitration.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.