AMERITAS INVESTMENT CORP., A NEBRASKA CORPORATION, AND
AMERITAS LIFE INSURANCE CORP., A NEBRASKA CORPORATION,
APPELLANTS, V. DIANA MCKINNEY, APPELLEE.
694 N.W.2d 191

Filed March 25, 2005. No. S-04-152.

David M. Williams for appellants.

Patrick G. Vipond and Stacy L. Morris, of Lamson, Dugan & Murray, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Diana McKinney, a resident of Virginia, was sued in the district court for Lancaster County by a Nebraska financial services corporation for damages arising out of McKinney's agency relationship with the corporation. The action was dismissed after McKinney challenged the court's personal jurisdiction over her. The question presented in this appeal is whether the choice of forum clauses contained in McKinney's agency contracts provide a prima facie showing that a Nebraska court may exercise personal jurisdiction over McKinney. Because we conclude they do, we reverse the judgment of the district court and remand the cause for further proceedings.

## BACKGROUND

The facts relevant to the jurisdictional issue presented in this appeal are largely undisputed. On November 1, 1998, McKinney entered into a "General Agent Contract" with Ameritas Life Insurance Corp. (ALIC), a Nebraska corporation. On December

1, McKinney entered into a "Securities Sales Agreement and Registered Representative Contract Commission Schedule" with Ameritas Investment Corp. (AIC), also a Nebraska corporation. (ALIC and AIC will be referred to collectively as "Ameritas.")

McKinney, a resident of Virginia, had been approached by Ameritas in Virginia about becoming an Ameritas agent. McKinney received and executed the contracts, for her part, in Virginia. The contracts were executed on behalf of Ameritas in Lincoln, Nebraska.

The ALIC contract required McKinney to indemnify ALIC for any disbursements made for claims against McKinney. Each contract also contained a nearly identical forum selection clause: "Any and all suits for the construction, interpretation, validity or enforcement of this Contract shall be instituted and maintained in any court of competent jurisdiction in Lancaster County, State of Nebraska." The contracts provided that they were to "be construed in accordance with the laws of the State of Nebraska."

By virtue of the contracts, McKinney became an independent agent licensed to sell Ameritas financial products. The contracts were to be performed only in the states where McKinney was licensed to sell Ameritas financial products: Virginia, California, Florida, and Maryland. McKinney is not licensed to sell Ameritas financial products in Nebraska, nor has she solicited a Nebraska resident in an attempt to sell Ameritas financial products. McKinney has never owned property in Nebraska, maintained an office in Nebraska, held a bank account in Nebraska, or been to Nebraska for any reason.

McKinney's immediate supervisor at ALIC was a vice president whose office is located in Nebraska. McKinney's supervisor visited her in Virginia on several occasions. The Ameritas policies sold by McKinney were processed in and issued from Nebraska, after McKinney sent the applications for those policies to Ameritas' Nebraska offices. If McKinney needed information on a policy, she would normally have obtained that information from Ameritas' Nebraska offices, and she was issued a personal identification number that allowed her to access policy information retained in Nebraska. All accounting functions pertaining to McKinney's commissions were handled in Lincoln, Nebraska, and McKinney was paid from Ameritas' Lincoln

offices. All the records pertaining to McKinney's business relationship with Ameritas are retained in Nebraska.

In 2002, Ursula White, a resident of Virginia lodged a complaint with Ameritas based on alleged conduct arising out of McKinney's sale of Ameritas financial products in Virginia. Ameritas employees in Nebraska settled the complaint. Ameritas then filed a complaint against McKinney in the district court, seeking $22,886.87 as indemnification for its settlement with White. McKinney filed a motion to dismiss pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(2) (rev. 2002), asserting that the court lacked personal jurisdiction over her pursuant to the Nebraska long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 1995), and the Model Uniform Choice of Forum Act (Choice of Forum Act), Neb. Rev. Stat. § 25-413 et seq. (Reissue 1995). The record, for purposes of this motion, consisted of the pleadings, contracts, and affidavits proffered by the parties.

The district court agreed with McKinney, concluding that the case should be dismissed because Nebraska was not a "reasonably convenient place" for trial of the action. See § 25-414. The court found that "[a]lthough the complaint in this case does not go into the details of the dispute, it is clear that the primary evidence will be the testimony of the disgruntled policy holder . . . ." The court found that White "cannot be compelled to attend a trial in Nebraska and it would be much more difficult for a judge or jury to evaluate the credibility of [White's] testimony without seeing her in person." Concluding that the action should be tried in Virginia, the court sustained McKinney's motion to dismiss. Ameritas appeals.

## ASSIGNMENTS OF ERROR

Ameritas assigns, consolidated and restated, that the district court erred in (1) finding that § 25-414 was applicable and using the "reasonably convenient place for trial" standard, (2) not using the "gravely difficult and inconvenient" standard, and (3) not finding it had personal jurisdiction over McKinney.

## STANDARD OF REVIEW

This court has not previously discussed the standard of review for a motion to dismiss for lack of personal jurisdiction filed

under rule 12(b)(2). Because the new civil rules for notice pleading are modeled after the Federal Rules of Civil Procedure, we look to the federal decisions for guidance. *Kellogg v. Nebraska Dept. of Corr. Servs., ante* p. 40, 690 N.W.2d 574 (2005).

The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003). But while the plaintiffs bear the ultimate burden of proof, personal jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Id.* See, also, *Northrup King v. Compania Productora Semillas*, 51 F.3d 1383 (8th Cir. 1995). To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction. *Epps v. Stewart Information Services Corp., supra.* See, also, *Northrup King v. Compania Productora Semillas, supra.*

When reviewing an order dismissing a party from a case for lack of personal jurisdiction under rule 12(b)(2), an appellate court examines the question whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. See *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690 (8th Cir. 2003). See, also, *Epps v. Stewart Information Services Corp., supra* (Fed. R. Civ. P. 12(b)(2) motions are reviewed de novo); *Northrup King v. Compania Productora Semillas, supra.* An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party. *Stanton v. St. Jude Medical, Inc., supra.* If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Epps v. Stewart Information Services Corp., supra.*

## ANALYSIS

### STATUTORY FRAMEWORK

This appeal requires us to consider the relationship between the long-arm statute and the Choice of Forum Act. The long-arm statute, as relevant, provides that a Nebraska court may

■■■■■■■■

exercise personal jurisdiction over a person who has "contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." § 25-536(2). This section extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits. *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., ante* p. 222, 691 N.W.2d 147 (2005). Thus, the question presented by the long-arm statute is, generally, whether the exercise of personal jurisdiction would not offend federal principles of due process. See *id.*

■■■ The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Id.*

■■■ Generally, this analysis requires us to determine whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. See, e.g., *Kugler Co. v. Growth Products Ltd.,* 265 Neb. 505, 658 N.W.2d 40 (2003). But that analysis applies "[w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant *who has not consented to suit there . . .* ." (Emphasis supplied.) See *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472. In *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472 n.14, however, the U.S. Supreme Court noted that

> because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." . . . For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. . . . Where such forum-selection provisions

have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," . . . their enforcement does not offend due process.

(Citations omitted.) Absent a showing that "trial in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will . . . be deprived of his [or her] day in court[,] there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his [or her] bargain." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972).

 Based on *Burger King Corp. v. Rudzewicz*, the weight of authority holds that a valid and enforceable choice of forum clause in a contract is sufficient in itself to waive the requirement of minimum contacts and to submit the nonresident to the jurisdiction of the forum state. See, e.g., *St. Paul Fire and Marine v. Courtney Enterprises*, 270 F.3d 621 (8th Cir. 2001); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218 (1st Cir. 1995); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286 (7th Cir. 1989); *Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710 (D.C. Cir. 1986); *Jacobsen Const. Co., Inc. v. Teton Builders*, 106 P.3d 719 (Utah 2005); *Kennecorp v. Country Club Hosp.*, 66 Ohio. St. 3d 173, 610 N.E.2d 987 (1993); *Vanier v. Ponsoldt*, 251 Kan. 88, 833 P.2d 949 (1992); *CV Holdings, LLC v. Bernard Technologies*, 14 A.D.3d 854, 788 N.Y.S.2d 445 (2005); *Desai Patel Sharma v. Don Bell Industries*, 729 So. 2d 453 (Fla. App. 1999); *Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 707 A.2d 314 (1998); *Voicelink Data v. Datapulse*, 86 Wash. App. 613, 937 P.2d 1158 (1997); *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 555 N.W.2d 640 (Wis. App. 1996). It can hardly be said that a defendant cannot reasonably anticipate being haled into court in a jurisdiction identified by a valid forum selection clause. Thus, a minimum contacts analysis is not appropriate in determining the validity of forum selection clauses in commercial contracts. *Kennecorp v. Country Club Hosp., supra.* Instead, due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause. See *St. Paul Fire and Marine v. Courtney Enterprises, supra.*

Under Nebraska law, the enforceability of a forum selection clause is evaluated by the terms of the Choice of Forum Act.

> If the parties have agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state will entertain the action if (a) the court has power under the law of this state to entertain the action; (b) this state is a reasonably convenient place for the trial of the action; (c) the agreement as to the place of the action was not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means; and (d) the defendant, if within the state, was served as required by law of this state in the case of persons within the state or, if without the state, was served either personally or by certified mail directed to his last-known address.

§ 25-414. This section applies "where the court would have no jurisdiction but for the fact that the parties have consented to its exercise by the choice-of-forum agreement." See Handbook of the National Conference of Commissioners on Uniform State Laws, Model Choice of Forum Act § 2, comment at 220 (1968).

▉ Consequently, where the exercise of personal jurisdiction is based upon a contractual choice of forum clause and is challenged on due process grounds, we must determine whether the choice of forum clause at issue satisfies the requirements of the Choice of Forum Act and the Due Process Clause. But as a practical matter, any forum selection clause which meets the Choice of Forum Act's requirement that Nebraska be a "reasonably convenient place for the trial of the action" will also satisfy the Due Process Clause requirement that trial of the action in Nebraska not be so gravely difficult and inconvenient that the party challenging the clause will be deprived of his or her day in court. See, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972). Therefore, any forum selection clause that satisfies the Choice of Forum Act will also comport with due process, and permit a Nebraska court to exercise jurisdiction under the long-arm statute. If the forum selection clause is not valid under the

Choice of Forum Act, however, the inquiry moves to whether the defendant has the necessary minimum contacts with Nebraska, other than the forum selection clause, to satisfy due process. See *Brunkhardt v. Mountain West Farm Bureau Mut. Ins., ante* p. 222, 691 N.W.2d 147 (2005).

Returning to Ameritas' arguments, we find that the foregoing analysis is dispositive of Ameritas' arguments in support of its first two assignments of error that the district court erred in applying the Choice of Forum Act's standards to the present case. Ameritas does not contend that absent the forum selection clauses, McKinney had the necessary minimum contacts with Nebraska to satisfy due process. Instead, Ameritas contends that in addition to the forum selection clauses, McKinney had other contacts with Nebraska that *taken together* would meet due process requirements. Thus, Ameritas claims that because the choice of forum clauses were not the "only" basis for the exercise of jurisdiction, the Choice of Forum Act should not have been applied. But where a choice of forum clause is a necessary component of the court's exercise of personal jurisdiction, it is clear that "the court would have no jurisdiction but for the fact that the parties have consented to its exercise by the choice-of-forum agreement." See Handbook of the National Conference of Commissioners on Uniform State Laws, *supra,* comment at 220. In short, since the court's exercise of jurisdiction in this case is dependent on the validity of the choice of forum clauses, the court did not err in applying the standards contained in the Choice of Forum Act.

We note, although it is not contested by the parties, that McKinney's challenge to the forum selection clauses was properly raised as a rule 12(b)(2) motion. Some state and federal courts have treated challenges to forum selection clauses as raising complaints of improper venue, or failure to state a claim. See, generally, *Voicelink Data v. Datapulse,* 86 Wash. App. 613, 937 P.2d 1158 (1997) (collecting cases). But under Nebraska law, § 25-414 of the Choice of Forum Act, as analyzed above, raises a jurisdictional barrier to the enforcement of a contractual choice of forum clause that does not meet the Choice of Forum Act's requirements, making a rule 12(b)(2) motion proper.

EVALUATION UNDER CHOICE OF FORUM ACT

We now turn to the basis for the district court's dismissal of this action: its conclusion that Nebraska was not a "reasonably convenient place for the trial of the action" within the meaning of § 25-414. Although the Choice of Forum Act was adopted from the Model Choice of Forum Act, see Handbook of the National Conference of Commissioners on Uniform State Laws (1968), that model act was not widely adopted, and was withdrawn in 1975, see Handbook of the National Conference of Commissioners on Uniform State Laws 100 (1975). As a result, there is little case law discussing the requirements of the Choice of Forum Act.

But it is established that the language of § 25-414 was intended to prevent a court from exercising jurisdiction where that exercise "would result in injustice or in substantial inconvenience to the parties." Handbook of the National Conference of Commissioners on Uniform State Laws, Model Choice of Forum Act, prefatory note at 219 (1968). This language, together with the underlying question whether the exercise of jurisdiction is "convenient" for the parties, has sensibly been held to support the use of considerations relevant to the forum non conveniens doctrine to aid in the construction of the statute. See *First Nat. Monetary Corp. v. Chesney*, 514 F. Supp. 649 (E.D. Mich. 1980).

The doctrine of forum non conveniens (literally, "an unsuitable court") provides that a state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action, provided that a more appropriate forum is provided to the plaintiff. See, Restatement (Second) of Conflict of Laws § 84 (1971); Black's Law Dictionary 680-81 (8th ed. 2004). It refers to the discretionary power of a court to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914 (1974).

But the plaintiff's choice of a forum should not be disturbed except for "weighty reasons," see Restatement, *supra*, comment *c.* at 251, and only when trial in the chosen forum would establish " ' "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," ' " or when

the forum is inappropriate " ' "because of considerations affecting the court's own administrative and legal problems," ' " see *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994). The trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process. See *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992). It is also appropriate to consider the advantages of having trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. See *American Dredging Co. v. Miller, supra.* But in any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his or her home forum will normally outweigh the inconvenience the defendant may have shown. *Koster v. Lumbermens Mutual Co.*, 330 U.S. 518, 67 S. Ct. 828, 91 L. Ed. 1067 (1947). Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947).

Thus, the question presented in this appeal, considering the applicable standard of review, is whether the facts taken in the light most favorable to Ameritas establish a prima facie showing that enforcement of the forum selection clause in this case would be "reasonably convenient," that is, would not result in serious and substantial inconvenience to McKinney, considering the factors set forth above. We find, on our de novo review of the record, that Ameritas made a prima facie showing of jurisdiction and that the district court erred in granting McKinney's rule 12(b)(2) motion. We note, particularly, that Ameritas' offices are located in Nebraska and that many of the business records that may be pertinent to the trial of this action are also located in Nebraska. Compare *Woodmen of the World Life Ins. Soc. v. Kight*, 246 Neb. 619, 522 N.W.2d 155 (1994). Furthermore, the contracts at issue specify that the laws of Nebraska are to govern construction of the contracts; presumably, a Nebraska court would be in a better position to apply Nebraska law should it be required. Compare *id.*

The district court's conclusion was based mainly on its reasoning that the primary evidence would be the testimony of the complainant, White, who could not be compelled to attend a trial in Nebraska. That may or may not prove to be the case; but at this juncture, on a rule 12(b)(2) motion, it is premature to conclude that the complainant's presumed unavailability in a Nebraska courtroom would produce " ' "oppressiveness and vexation to [the] defendant . . . out of all proportion to plaintiff's convenience." ' " See *American Dredging Co. v. Miller*, 510 U.S. at 447-48. Simply stated, the question is not whether Virginia would be a *better* place for this action to be tried. The question is whether or not Nebraska would be a "reasonably convenient" place for trial of the action or, in other words, whether Nebraska would be a place so substantially inconvenient that we should disregard Ameritas' choice of this forum and the parties' previous agreement that suits arising from these contracts would be tried in Nebraska. See *Epps v. Stewart Information Services Corp.*, 327 F.3d 642 (8th Cir. 2003). The evidence present in the record before us establishes a prima facie case that Nebraska is a reasonably convenient forum.

With respect to the other requirements of the Choice of Forum Act, McKinney does not contend that Nebraska lacks subject matter jurisdiction over the act or that service of process was defective. See § 25-414. McKinney does argue in her appellate brief that the forum selection clauses should be found invalid as contained in contracts of adhesion. However, there is no suggestion in the record that this argument was presented to the trial court. An issue not presented to or decided by the trial court is not appropriate for consideration on appeal. *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004). In any event, there is no evidence in the present record that would tend to show that McKinney's contracts with Ameritas were adhesion contracts.

We conclude that Ameritas' final assignment of error has merit. The district court erred in granting McKinney's rule 12(b)(2) motion to dismiss.

## CONCLUSION

While the district court did not err in applying the requirements of the Choice of Forum Act to the forum selection clauses

at issue in the instant case, the court did err in concluding that the requirements of § 25-414 were not satisfied, considering the standards appropriate for ruling on a motion to dismiss pursuant to rule 12(b)(2). The judgment of the district court is therefore reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.