IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


LUNDAHL V. CHAVARIN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


LOGAN LUNDAHL AND HOLLI LUNDAHL, APPELLANTS,

V.

LILIA CHAVARIN ET AL., APPELLEES.


Filed January 22, 2019.    No. A-17-908.


Appeal from the District Court for Sheridan County: TRAVIS P. O'GORMAN, Judge. Affirmed as modified.

Logan Lundahl and Holli Lundahl, pro se.

Eric H. Lindquist, P.C., L.L.O., for appellee J.P. Morgan Chase Bank.

Adam A. Hoesing, of Simmons Olsen Law Firm., P.C., for appellee Old Republic Insurance Company.

Mary C. Corporon, pro se.


MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

While addressing motions to dismiss filed by only two of the numerous Defendants, the Sheridan County District Court, sua sponte, dismissed the entirety of the Lundahls' complaint as to all parties citing lack of subject matter jurisdiction, personal jurisdiction, improper forum, and frivolous pleading. Because we agree that this claim is filed in an improper forum, we affirm the district court's order as modified.

- 1 -

## SUMMARY OF FACTS

### LUNDAHL'S COMPLAINT

Logan Lundahl (Logan) and Holli Lundahl (Holli) filed a complaint claiming they are "trustees and assignees" of property claims belonging to the Lundahl Trust and seeking "damages for depletion of assigned trust assets and for personal injuries to Holli Lundahl." The complaint then presents a confusing set of facts which appear to transpire over more than 20 years, involving several state and federal courts, none of which appear to have any nexus with the State of Nebraska. The primary factual allegations appear to be as follows:

In 1994, Holli owned certain residential real estate in Provo, Utah, and purchased a note from Prudential Bank "pending against her property and carrying a principal pay off balance of $50,000." Holli alleges she purchased the note, which note and mortgage were assigned to her, and then "temporarily sold this $50,000 note to an entity by the name of Los Angeles Homeowner's Aid [(LAHA)] to obtain repair funds for her Utah home." Holli alleges that, secondary to her "buyback agreement," she entered into a "temporary note assignment agreement" with LAHA. The "temporary note assignment agreement" was recorded in the Utah County recorders office and permitted LAHA to collect rent payments from Marlene Telford, an apparent tenant of Holli, in lieu of mortgage payments.

Holli then alleges that LAHA illicitly entered into a reverse mortgage on her property with Telford. She alleges she tried to refinance the note held by LAHA, but LAHA would not provide a payoff statement. As a result, Holli alleges she filed an injunction against LAHA "in the state courts in Utah in 1998." She claims there was no resolution to that action before Telford filed for bankruptcy in 2000 "then intervened in HOLLI's state injunction action" and filed a notice of automatic stay. Holli alleges Telford then filed a quiet title action against Holli, which Holli alleges Telford voluntarily dismissed in 2003 but, "in the interim, HOLLI filed chapter 13 bankruptcy as case no. 03-21160." Holli claims the bankruptcy judge entered "disallowance injunctions" against various creditors, affirmed Holli's amended Chapter 13 plan, and declared "the assignment to LAHA VOID . . . because LAHA refused to produce the requested payoff statement to GOOD NEIGHBOR HOUSING so that HOLLI could buy back her assigned $50,000 note." Holli alleges the bankruptcy judge found that LAHA deliberately breached the buyback agreement in bad faith and issued "a penalty against LAHA for the value of the assignment." Holli alleges that decision was never appealed.

Holli alleges that, two years later, LAHA "forum shop[ped] a judicial foreclosure action to a biased state court in American Fork[,] Utah" suing Holli and Telford to foreclose any rights to the property. She alleges LAHA concealed the bankruptcy court order and disregarded the automatic stay and alleges she was not properly served with the foreclosure petition and made a special appearance to contest jurisdiction. Holli alleges LAHA conspired with "[Washington Mutual Bank] WAM[U] (HOLLI's the[n] bank) and its branch manager [Lilia] CHAVARIN, to accuse HOLLI of forging CHAVARIN's WAMU Bank notary onto declarations HOLLI and a witness Jem Keddington had filed in the judicial foreclosure action challenging the court's jurisdiction." Holli alleges the "biased state judge" stayed the judicial foreclosure action and commenced criminal contempt prosecutions against Holli for notary forgery.

Holli next alleges LAHA procured a "partnered member of the firm representing LAHA, who was also a bankruptcy judge, to orchestrate the closing of HOLLI's bankruptcy estate." She also alleges that she was then acquitted of the notary fraud charge following a June 2006 trial. Nevertheless, she alleges WAMU, Chavarin, and LAHA subsequently procured the FBI to "re-prosecute HOLLI for the same crimes for which HOLLI was acquitted in the state court under the dual sovereign doctrine." Holli alleges LAHA complained that Holli had hidden assets in her bankruptcy case. Holli alleges she was indicted on October 4, 2006, based upon "false documents submitted to a Utah federal grand jury and the perjured testimony suborning those false documents." She alleges she was seized from her home at gunpoint, in the state of Wyoming, and immediately imprisoned in the state of Utah.

Holli claims she was represented by D. Bruce Oliver, who collected a $15,000 retainer collateralized against her Wyoming properties, but alleges Oliver turned out to be suspended from practicing in federal court and placed the money in a personal account. She also alleges she was denied pre-trial release by a magistrate who had "substantial stock interests in WAMU." Holli alleges attorney Oliver made only a 2-minute defense on her behalf, refused to refund her retainer, and was suspended from the practice of law without appealing the adverse ruling against her.

Holli then alleges she commenced her own representation after being examined by medical experts. She claims that the sitting trial judge "also bearing a financial and bias interest in the case" revoked her pro se representation and appointed Defendant Mary Corporon to represent her. Holli alleges she demanded certain things from her attorney but that her attorney did nothing to advance Holli's causes. Holli alleges she was allowed to "rot in jail for 3 years, until the criminal charges were dismissed in 2009 for lack of probable cause and subject matter jurisdiction."

Holli alleges that, during her incarceration, LAHA and her attorneys stipulated to give title to Holli's real property to Telford upon payment of $650,000 including attorney fees. Holli claims she was defaulted out of the action due to her detainment on her criminal charges. Holli alleges Logan was able to appeal the apparent judgment governing Holli's property to the Utah appellate courts on her behalf and filed a removal petition to the federal courts.

Holli alleges that, while she was imprisoned, J.P. Morgan Chase Bank (JPMCB) acquired WAMU's assets and insurance policies covering Holli's third-party injuries from 2006 to 2009. She alleges JPMCB then "continued HOLLI's false detention."

Holli next alleges that once she was released from prison and exonerated, she returned to an "Idaho property" because her "Wyoming property" had been pipe-bombed. She claims this action took place to bar her use of the Wyoming property as collateral to obtain bond money for her pre-trial release.

Holli alleges she then petitioned the Utah federal court for relief from the state court's "quiet title" order governing her Utah property. She alleges that, while this was pending, the Utah appellate court, in violation of the removal statutes entered a "void advisory opinion" sustaining the quiet title order. Sometime thereafter, Holli alleges the federal court dismissed her federal claim which attempted to remove the state claim to federal court "without prejudice."

Holli then alleges in 2010 and 2011, she learned WAMU had gone into receivership with FDIC. Holli alleges she repeatedly contacted the FDIC to file a claim against the FDIC for benefits under their insurance policies. She then states the Defendants conspired together with local Idaho authorities to raid her Idaho farm and destroy her computers and storage drives containing evidence

governing the aforementioned claims. She claims Idaho officials seized her computer, electronic storage media, and records "pursuant to false allegations that HOLLI allegedly stole a third persons' [sic] residential broadband IP address signal." She claims that, prior to advancing charges relating to her alleged criminal activities, the prosecutor had already received information from "GOOGLE" that she had not transmitted from the stolen IP address. She claims she was then arrested for seeking to videotape this alleged seizure. She claims the matter was ultimately dismissed for lack of probable cause. However, Holli alleges that county officials retained her computers and other media for another case in which "US Bank, Wells Fargo, Chavarin, LAHA and Telford would continue to re-litigate their identical notary fraud charges for the third time" albeit now in Idaho.

Holli claims the Idaho fraud charge was dismissed but learned that Idaho "county officials in collusion with LAHA, WELLS FARGO, US BANK, CHASE and other tortfeasors had destroyed [her] computers, software, and legal files in violation of the CFAA." She alleges the Idaho state judge denied her request for a forensic expert to retrieve and correct "the corrupted hard drives on HOLLI's computers and storage devices."

Finally, Holli alleges she returned to Wyoming and filed her "saved claims" against JPMCB and Chavarin in Sweetwater County, Wyoming. She alleges Judge Richard Lavery entered an order against her barring her from further filings against JPMCB notwithstanding Holli's alleged production of a document from the FDIC which she claims directs her to make claims against JPMCB. She alleges this suit includes a claim against Judge Lavery for that order. She further alleges she also sued JPMCB, Chavarin, and their joint attorneys for using the office of Lavery to commit wire fraud and mail fraud to deprive Holli of her rights to sue for personal injuries.

She also seeks a declaratory judgment requesting a determination that "JPMCB is the liable insured" to Holli. She states she also filed "an amended FTCA claim against the FDIC for various torts . . . in December of 2014" Holli alleges she brought a separate action against Telford in Wyoming. She claims, on January 3, 2014, a Wyoming judge granted judgment against Telford. She claims Telford subsequently admitted under oath she fraudulently obtained the quiet title action while Holli was imprisoned. She alleges Telford further admitted that this result was obtained due to a fraud perpetrated on the Utah court and the Utah property has since been deeded to a bona fide purchaser. Holli then sums up the factual section of her petition by stating:

> HOLLI pursues an offensive collateral estoppel judgment against LAHA and JPMCB (the latter as LAHA's former corporate malfeasance insurer) with respect to the judicial admissions of Marlene Telford made in March of 2014 and which conclusively admitted that LAHA and JCMCB exercised a mail fraud scheme including more than 168 mailings from Marlene Telford to LAHA from 1996 to 2006 under a void reverse mortgage contract between LAHA and Marlene . . . and resulting in the evisceration of HOLLI's $600,000 equity in her Provo, Utah property.

## DISTRICT COURT'S ORDER

On July 12, 2017, the Sheridan County District Court filed an order to resolve pending motions to dismiss filed by Old Republic and JPMCB claiming, among other things, the court

lacked personal jurisdiction and Nebraska was an improper forum for the Lundahls' claims. The order also resolved motions for default judgment filed by the Lundahls against various Defendants. The district court's order stated:

> Because the Court concludes that it has no jurisdiction over the parties or the subject matter of this action, [the Lundahl]'s Complaint is dismissed with prejudice to refiling. Her motions for default judgment are denied.
>
> A simple review of [the Lundahls]' Complaint quickly reveals this action is frivolous. The action does not belong in this or in any state court in the State of Nebraska. None of the facts alleged in the Complaint involve any acts or action in Nebraska. All defendants are residents of states other than Nebraska. Only the Seventh Cause of Action is brought under Nebraska State law. However, that cause of action makes no specific reference to any act or activity occurring in the State of Nebraska. On the Court's own motion, the [Lundahls]' Complaint is dismissed in its entirety, and with prejudice. [The Lundahls] are precluded from filing any other pleadings in this Court.

The Lundahls timely filed a motion to alter or amend which was denied by the district court, and they now timely appeal to this court.

## ASSIGNMENTS OF ERROR

The Lundahls assert the following assignments of error in connection with their appeal: (1) the district court erred in not correcting its dismissal order to reflect that all defendants have waived their personal jurisdiction and venue objections and thus made general appearances in the underlying action; (2) the district court erred in determining that the Lundahls' claims were frivolous and lacked merit based upon Corporon's fraudulent claim that a prior Wyoming court found so and without considering the impeachment evidence in the record showing otherwise; (3) the district court erred in holding that the Lundahls had not alleged sufficient facts, accepted as true, to state claims for relief that were plausible on their face, citing largely to *Craw v. City of Lincoln*, 24 Neb. App. 788, 899 N.W.2d 915 (2017); (4) the district court erred in not entering default judgments against the defaulting Defendants who intentionally chose not to appear and respond after receiving more than eight notices by the Lundahls, the opposing parties, and the court that proceedings were pending against all parties; and (5) the district court exhibited pervasive bias against the Lundahls and substantively advocated the Appellee's claims thus exhibiting constitutional bias and requiring disqualification.

## STANDARD OF REVIEW

Whether a suit should be entertained or dismissed under the rule of forum non conveniens depends largely upon the facts of the particular case and rests in the discretion of the trial court. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008).

When there are no factual disputes regarding state contacts, conflict-of-law issues present questions of law. *Id*. When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion. *Id*.

ANALYSIS

Holli's first assignment of error attacks the district court's dismissal for lack of personal jurisdiction and improper venue claiming the Defendants waived these objections by filing general appearances.

One basis upon which the district court dismissed this claim is that "None of the facts alleged in the Complaint involve any acts or action in Nebraska." On that basis, Old Republic Insurance Company and JPMCB both requested that the matter be dismissed. This doctrine is commonly referred to as "forum non conveniens." As our Supreme Court has explained:

> The doctrine of forum non conveniens (literally, "an unsuitable court") provides that a state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action, provided that a more appropriate forum is provided to the plaintiff. It refers to the discretionary power of a court to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum.

*Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 574, 694 N.W.2d 191, 202 (2005). This doctrine was codified by the Legislature at Neb. Rev. Stat. § 25-538 (Reissue 2016) which provides: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just."

Although the doctrine was invoked by Old Republic Insurance Company and JPMCB in their respective motions to dismiss, the doctrine can be invoked sua sponte by the court on its own motion. See, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Estate of Thompson ex. rel Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357 (6th Cir. 2008); *Wilburn v. Wilburn*, 192 A.2d 797 (D.C. 1963).

The doctrine of forum non conveniens involves a balancing of conveniences and results in dismissal when the court finds that substantial justice dictates that the matter should be heard in another forum. *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914 (1974). As the Nebraska Supreme Court noted in *Ameritas Invest. Corp.*, 269 Neb. at 574-75, 694 N.W.2d at 202:

> But the plaintiff's choice of a forum should not be disturbed except for "weighty reasons," and only when trial in the chosen forum would establish ""oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,"" or when the forum is inappropriate ""because of considerations affecting the court's own administrative and legal problems[.]"" The trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process. It is also appropriate to consider the advantages of having trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. But in any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his or her home forum will normally

outweigh the inconvenience the defendant may have shown. Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

In balancing the conveniences present here, we hold that substantial justice dictates that the Sheridan County District Court for the State of Nebraska is an improper forum for these claims. In reaching that conclusion, we note first that the only reference to the State of Nebraska in the Lundahls' complaint is that the Lundahls allegedly assigned these claims to a trust which is being administered in Sheridan County, Nebraska. Most notably, none of the alleged facts constitute the basis for claims occurring anywhere in this State. As we understand it, the gravamen of the Lundahls' complaint is that Holli's Utah property was taken from her due to a series of fraudulent misrepresentations to persons and courts over a period of two decades which resulted in her loss of property and her incarceration. Holli alleges that numerous persons, corporations, officials, and courts conspired against her in the States of Utah, Wyoming, and Idaho. The cases involved matters decided, in part, by state courts, federal courts, an appellate court, and bankruptcy courts in those States, none of which have any nexus to the State of Nebraska. Nevertheless, the Lundahls, for some reason, opted to file this claim in Sheridan County District Court naming mostly federal causes of action against multiple parties involving matters which have nothing to do with the State of Nebraska.

Aside from the limited convenience of the Lundahls filing suit here under the auspices of the claims being assigned to a trust which is now being administered here, we take note of the Supreme Court's statement governing the "court's own administrative and legal problems" associated with a filing such as this. *Ameritas Invest. Corp.*, 269 Neb. at 574-75, 694 N.W.2d at 202. We note both the administrative problems associated with attempting to secure the attendance of witnesses through compulsory process, and most notably, asking this court to untangle problems in conflict of laws foreign to the State which inevitably must occur here in connection with a matter that has no nexus with this State.

We further note the burden to the citizens of the State of Nebraska with jury duty over controversies foreign to the forum, the local interest in having local controversies decided at home, and administrative difficulties flowing from court congestion relating to matters foreign to this jurisdiction. *Piper Aircraft v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 419 (1981).

Holli argues that the Defendants waived their objections to venue by filing general appearances. We note that only two Defendants responded to the complaint and each filed motions to dismiss arguing the Sheridan County District Court was an improper venue. The remaining Defendants had not filed responses at the time of the hearing. Contrary to her argument, no party had legally consented to the Sheridan County District Court as a proper venue. Even if one party did consent, we note the court has the inherent power to dismiss claims pursuant to § 25-538 in the interests of substantial justice.

Assuming without deciding that the district court had subject matter jurisdiction and personal jurisdiction here, after performing the requisite balancing analysis, upon our de novo review, we hold that the court did not err here in determining on its own motion that this matter should be dismissed under the doctrine of forum non conveniens as defined in § 25-538. See *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (holding "A district court . . . may dispose of an action by a *forum non conveniens*

dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant"). In finding the doctrine applicable here, we need not address Holli's other assignments of error since the court is not exercising jurisdiction over this controversy. See *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018) (appellate court not obligated to engage in analysis which is not needed to adjudicate controversy before it).

We separately note that Logan and Holli brought this claim as "trustees and assignees of the property claims belonging to the Lundahl trust" and filed their complaint pro se without counsel. As the Nebraska Supreme Court held in *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 29, 443 N.W.2d 604, 605 (1989):

> [A] trustee's duties in connection with his or her office do not include the right to present argument pro se in courts of the state, because in this capacity such trustee would be representing interests of others and would therefore be engaged in the unauthorized practice of law. See *In re Ellis,* 53 Haw. 23, 487 P.2d 286 (1971).

Further, the Supreme Court has held that the filing of a complaint which constituted the unauthorized practice of law renders the complaint a nullity. *Kelly v. Saint Francis Med. Ctr.*, 295 Neb. 650, 889 N.W.2d 613 (2017). Accordingly, we hold that Holli and Logan's complaint, filed as trustees and assignees of the Lundahl Trust, constituted the unauthorized practice of law and was a nullity and the matter could rightfully have been dismissed on that basis alone.

We do, however, note that the district court dismissed the matter with prejudice "from filing any other pleading in this court." We note § 25-538 allows the court to dismiss the action "on any condition that may be just." We hold that the court's order does not preclude the Lundahls from filing this action in an appropriate forum, meaning, a forum which is not a state court in the State of Nebraska. We, therefore, affirm the district court's order as modified.

AFFIRMED AS MODIFIED.