AETNA CASUALTY & SURETY COMPANY, A CORPORATION, APPELLEE, v. JACK L. DICKINSON ET AL., APPELLANTS, WILLIAM G. DICK ET AL., APPELLEES.

345 N.W.2d 8

Filed March 2, 1984. No. 83-051.

Brian R. Watkins, for appellants.

Larry Ruth of Knudsen, Berkheimer, Richardson & Endacott, for appellee Aetna.

KRIVOSHA, C.J., WHITE, CAPORALE, and SHANAHAN, JJ., and BRODKEY, J., Retired.

KRIVOSHA, C.J.

This appeal clearly establishes how some individuals believe that litigants may ''play games'' with the courts, and how this court will not tolerate such behavior. The appeal arises out of a refusal by the district court for Lancaster County, Nebraska, to set

aside a default judgment entered in favor of the appellee Aetna Casualty & Surety Company against the appellants, Jack L. and Virginia Dickinson, husband and wife. In September of 1979 suit was commenced by Aetna against the Dickinsons on a certain guaranty allegedly executed by the Dickinsons in favor of Aetna. The facts underlying the execution of the guaranty are not material to this appeal.

On October 6, 1980, Aetna filed a motion to require the Dickinsons to produce documents bearing their signatures. This was done pursuant to Neb. Rev. Stat. § 25-1267.39 (Reissue 1979), since repealed. Specifically, the motion sought the production of 12 documents, all signed in the years 1972, 1973, and 1974, with at least two signatures having been made in each year. On October 24, 1980, the district court for Lancaster County issued an order requiring production of the requested documents by November 17, 1980. The relevance of these documents became more apparent when, on February 5, 1981, the Dickinsons filed an answer admitting all the allegations of Aetna's petition except paragraph 5, which alleged that the Dickinsons had executed the guaranty agreements. Although the Dickinsons had been ordered to produce these documents by November 17, 1980, they did not comply; and on February 6, 1981, Aetna filed a motion in the district court for Lancaster County, seeking an order deeming the signatures admitted as a sanction for failure to comply with the discovery order dated October 24, 1980. For reasons which are not at all clear from the record, the court, on February 10, 1981, overruled the motion for sanctions. The documents, however, had still not been produced, and therefore the court ordered the production of the documents by February 19, 1981, at 3 p.m. On February 20, 1981, the Dickinsons, still not having produced the documents, through their attorney moved for an order suspending the court's order of February 10. As support for the motion, an affidavit was attached, reciting that the Dickinsons

were vacationing in Mexico and the date of their return was unknown. No order was entered in response to this motion. On February 23, 1981, Aetna filed a further motion for sanctions. On March 11, 1981, the trial court sustained Aetna's motion for sanctions and ordered entry of a default judgment against the Dickinsons. On March 18, 1981, the court entered an order setting out the amount of the judgment, together with interest and attorney fees. No significant action was taken by the Dickinsons on this default judgment for more than 16 months, until on July 20, 1982, the Dickinsons filed a motion to set aside the judgment. The motion was denied by the trial court.

The Dickinsons have now appealed to this court, maintaining that the trial court erred in not setting aside the judgment on the grounds that the Dickinsons were prevented from defending the action by virtue of unavoidable casualty or misfortune, as provided for in Neb. Rev. Stat. § 25-2001 (Reissue 1979). Furthermore, the Dickinsons argue to this court that even if that assignment is not valid, there are three alleged plain errors they wish to raise for the first time in this court.

As the basis of their claim that they could not defend because of unavoidable casualty or misfortune, they argue to the trial court that sometime between February 15 and February 25, 1981, the exact date unknown, Jack Dickinson suffered a head injury while in Mexico, which prevented him from returning to the United States until June or July of 1981. Moreover, his wife, who was with him, cared for him during all of that time. This claim, even if true, is simply preposterous.

In the first instance, the documents which were sought to be produced were documents which were in existence for nearly 10 years prior to the alleged accident and did not require Jack Dickinson to execute any further document. Even if we can assume that during the time he was confined to the hospital

he could not advise his attorney where the documents were located, the record is clear that his wife could have done so. More importantly, 4 months expired from the time the court first ordered the Dickinsons to produce these documents and the time that Mr. Dickinson allegedly suffered his head injury. This was more than ample time in which to comply with the court's order. And even when the Dickinsons moved on February 20, 1981, for an order suspending the court's previous orders, no mention was made of their inability to locate or produce the documents. The excuse that was given was simply that the Dickinsons were on vacation out of the country and apparently would comply with the court's orders when they got good and ready. The parties may not disregard court orders until they choose. And even after the judgment was entered, the Dickinsons waited until after term, nearly 16 months, to have the judgment set aside. We do not believe this in any manner comes within the terms of § 25-2001, which provides: "A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made . . . (7) for unavoidable casualty or misfortune, preventing the party from prosecuting or defending . . . ." There is nothing about the facts presented, either to the trial court in the first instance or to this court on appeal, which would support a claim that the Dickinsons were unable to defend the action because of unavoidable casualty or misfortune. They were unable to defend this action because they chose to ignore this action.

As we noted in *Norfolk Packing Co. v. American Ins. Co.*, 116 Neb. 118, 122, 216 N.W. 309, 310 (1927): "Under the statute an 'unavoidable casualty' is not of itself ground for the granting of a new trial at a subsequent term of court. The 'casualty,' to be available for that purpose, must be one 'preventing the party from prosecuting or defending.' " There is nothing in this record to indicate that Dickinson's

injury in any manner prevented the production of these documents, either when originally ordered and ignored or some long time thereafter. This was a case of lack of diligence on the part of the Dickinsons, and as we noted in *Emry v. American Honda Motor Co.*, 214 Neb. 435, 443, 334 N.W.2d 786, 792 (1983), " 'The power to modify or set aside a judgment ends with the adjournment of the term at which it was rendered except as provided in section 25-2001, R.R.S. 1943. . . . In an action to vacate judgment after the adjournment of the term, the applicant must allege and prove that he exercised due diligence and that his failure to secure a proper decision was not due to his fault or negligence.' [Citations omitted.]"

The rule is well established in this state that lack of diligence or negligence of counsel is not an unavoidable casualty or misfortune. See, *Lyman v. Dunn*, 125 Neb. 770, 252 N.W. 197 (1934); *Brown v. Lincoln*, 157 Neb. 840, 61 N.W.2d 836 (1954). Nor is a court of this state authorized to set aside a judgment or order after the term because of a party's own mistake, inadvertence, or neglect. See, *State, ex rel. Spillman, v. Commercial State Bank*, 143 Neb. 490, 10 N.W.2d 268 (1943); *Kulhanek v. Kulhanek*, 106 Neb. 595, 184 N.W. 139 (1921). The difficulty in this case was brought about by appellants' lack of interest and concern in the lawsuit, and the trial court was correct in refusing to set aside the default judgment after term on the basis of unavoidable casualty or misfortune.

Additionally, contrary to the statute, the Dickinsons, when moving to set aside the judgment, offered no defense to the merits of the case. See, Neb. Rev. Stat. § 25-2002 (Reissue 1979); *Hoeppner v. Bruckman*, 129 Neb. 390, 261 N.W. 572 (1935).

In *Sargent Feed & Grain v. Anderson*, ante p. 421, 425, 344 N.W.2d 59, 61 (1984), we said: "It is the duty of the courts to prevent abuse of process, unnecessary delays, and dilatory and frivolous pro-

ceedings in the administration of justice. *Beliveau v. Goodrich*, 185 Neb. 98, 173 N.W.2d 877 (1970). This court will not tolerate or reward a course of conduct deliberately designed to disrupt the orderly administration of justice. *Morgan v. Weiner*, 173 Neb. 715, 114 N.W.2d 720 (1962)."

One further matter requires our attention. Dickinsons argue, and assign as error, that the court erred in entering a judgment in excess of the amount disclosed by the record. In view of the fact that we have determined that the trial court did not err in refusing to set aside the default judgment, we are compelled to further find that the judgment, when entered, became a final and binding judgment from which an appeal had to have been taken within 1 month or was no longer subject to review. See, Neb. Rev. Stat. § 25-1912 (Reissue 1979); *American Legion Post No. 90 v. Nebraska Liquor Control Commission*, 199 Neb. 429, 259 N.W.2d 36 (1977); *Frenchman-Cambridge Irrigation Dist. v. Ferguson*, 154 Neb. 20, 46 N.W.2d 692 (1951). Determining as we do that the trial court was correct in refusing to set aside the default judgment, we must therefore conclude that this court would be without jurisdiction to review any other errors alleged by the Dickinsons, including any which they maintain are plain error in the original default judgment from which no appeal was taken.

The judgment of the trial court is affirmed.

AFFIRMED.