AMY JAMES, APPELLEE, V. MARY DEAN HARVEY, IN HER OFFICIAL CAPACITY AS THE DIRECTOR OF SOCIAL SERVICES, ET AL., APPELLANTS.

518 N.W.2d 150

Filed July 8, 1994.   No. S-93-180.

Don Stenberg, Attorney General, and Royce N. Harper for appellants.

Margaret A. McDevitt, of Legal Services of Southeast Nebraska, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

Mary Dean Harvey, in her official capacity as Director of Social Services; the Department of Social Services; and the State of Nebraska (hereinafter collectively referred to as DSS) appeal from an order of the district court for Lancaster County which imposed a sanction upon DSS for failure to timely file the transcript of an agency hearing. The district court reversed DSS' denial of reimbursement for medical expenses incurred by Amy James, which denial was based on the fact that one of the doctors who treated James was suspended from participation in the medicaid program at the time he treated James. We affirm.

## SCOPE OF REVIEW

In an appeal under the Administrative Procedure Act, the appeal shall be taken in the manner provided by law for appeals in civil cases, and the judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record. See, Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1992); *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993).

The standard of review on a trial court's determination of a request for sanctions is whether the trial court abused its discretion. *Paro v. Farm & Ranch Fertilizer*, 243 Neb. 390, 499 N.W.2d 535 (1993).

## FACTS

On July 15, 1992, Amy James filed a petition for review in the district court for Lancaster County seeking reversal of an order issued by the Director of Social Services. The director's order affirmed a finding by DSS' medical service division that medicaid would not reimburse the hospital at which James was treated for medical expenses she incurred on September 4 and 5, 1991.

James alleged that she was eligible for medicaid assistance for medical services involving her unborn child and that she

received medical services in September 1991 after a miscarriage. One of the physicians who provided the care, Dr. Harold Thaut, was suspended from participation in the medicaid program from October 2, 1990, until June 2, 1992. The other physician involved and the hospital at which James was treated were not suspended from participation in the medicaid program.

The hospital billed James in the amount of $3,265.50 for medical services and supplies, and Thaut billed for his services separately. DSS determined that Thaut's involvement in James' care precluded medicaid reimbursement of the hospital under Nebraska medicaid regulations 471 Neb. Admin. Code, ch. 2, §§ 002.05C and 002.05D (1988). James claimed that she did not request Thaut's services and did not know that he was involved in her care until after he had performed surgery on her. She did not learn Thaut had been suspended from participation in the medicaid program until a hospital employee told her in January 1992.

James claimed that the expenses billed by the hospital were not performed or provided by Thaut. She alleged that DSS' decision was in excess of its statutory or regulatory authority; was unsupported by competent, material, and substantial evidence; and was arbitrary and capricious.

DSS generally denied the allegations in James' petition and filed a motion for leave to file the transcript out of time because DSS' reporters had an increased volume of work and were attempting to complete a backlog of cases. DSS was granted an extension until October 15, 1992.

On October 27, 1992, James moved the court for an order striking DSS' answer and entering default judgment because DSS had failed to file the transcript pursuant to Neb. Rev. Stat. § 84-917(4) (Cum. Supp. 1992). As a sanction, the district court reversed the decision of DSS' director. The court noted that the transcript of the proceedings before the agency had not been filed until October 28, the day after James filed her motion to strike. The court then taxed the costs of the action to DSS.

## ASSIGNMENTS OF ERROR

On appeal, DSS claims the district court abused its discretion

in imposing the sanction for failure to file the transcript in the time required by statute and in considering the failure to timely file the transcript as jurisdictional.

## ANALYSIS

We first address the question of jurisdiction. This assignment of error is without merit because the record shows that the district court did not treat the lateness of the transcript as a jurisdictional issue.

Section 84-917(2)(a) provides:

> Proceedings for review shall be instituted by filing a petition in the district court of the county where the action is taken within thirty days after the service of the final decision by the agency. . . . Summons shall be served within thirty days of the filing of the petition in the manner provided for service of a summons in a civil action.

The filing of the petition and the service of summons are the two actions that are necessary to establish jurisdiction pursuant to the Administrative Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1987 & Cum. Supp. 1992). In *Maurer v. Weaver*, 213 Neb. 157, 328 N.W.2d 747 (1982), we held that the preparation and filing of a transcript under the Administrative Procedure Act was not jurisdictional. The current language in § 84-917 which addresses the time allowed for filing a transcript is nearly identical to the language which was applicable in *Maurer*, the exception being that the time allowed for filing a transcript has been expanded from 15 days to 30 days. Our holding that the filing of the transcript is not jurisdictional still applies, and the district court had jurisdiction to take action on James' petition even though DSS had not timely filed the transcript.

We next address whether the district court can reverse DSS' order as a sanction for the agency's failure to timely file the transcript. DSS argues that it had good cause for the delay and for requesting an extension because of the increased volume of pending work for the agency's reporters. DSS did not provide documentation, but stated that it was common knowledge that there had been an increasingly high volume of administrative

hearings before the director and a proportionate number of appeals to the district court.

Our review of a trial court's determination of sanctions is whether the trial court abused its discretion in imposing the sanctions. *Paro v. Farm & Ranch Fertilizer*, 243 Neb. 390, 499 N.W.2d 535 (1993). The U.S. Supreme Court has stated that an appellate court should apply an abuse of discretion standard in reviewing all aspects of a federal district court's determination of sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The standard was adopted by this court in *Millard v. Hyplains Dressed Beef*, 237 Neb. 907, 468 N.W.2d 124 (1991).

Here, the petition was filed July 15, 1992, and the transcript was not filed until more than 3 months later. Upon DSS' motion, the court granted the agency until October 15 to file the transcript. In its order, the court specifically excised a phrase which stated that the court had found good cause for the extension. When October 15 arrived and no transcript had been filed, James filed a motion asking the court to strike DSS' answer and enter a default judgment.

It is the duty of courts to prevent dilatory proceedings in the administration of justice. *Aetna Cas. & Surety Co. v. Dickinson*, 216 Neb. 660, 345 N.W.2d 8 (1984). In *Pressey v. State*, 173 Neb. 652, 114 N.W.2d 518 (1962), we recognized the inherent power of the court to dismiss an action for disobedience of a court order. However, in this situation it would be inequitable to dismiss the case because that would penalize James, the party seeking review of the agency's order. The district court stated at the hearing on James' motion to strike that this was the third or fourth case in the prior 3 months in which the filing of the transcript by DSS had been a problem. The court found that DSS' claim of an increased workload was not sufficient for the court to make a finding that good cause had been shown for an extension.

The transcript consisted of 23 pages of testimony and 21 exhibits which total less than 50 pages. DSS provided no rational explanation as to why it would take more than 3 months to produce the transcript. As the court noted, a sanction which would require DSS to pay the costs of preparing

the transcript would serve no purpose because the agency's employees prepare the transcript and because James was proceeding in forma pauperis. The court determined that the only sanction which would send a message to DSS concerning its dilatory practice was to reverse the agency's order.

In an action brought under the Administrative Procedure Act, it is the responsibility of the agency to provide the transcript in a timely fashion. The failure to do so subjects the agency to the disciplinary powers of the court. In the present case, we find that the district court did not abuse its discretion in reversing the agency's order.

The decision of the district court is affirmed.

AFFIRMED.