IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LUNDAHL V. ROBERTS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

LOGAN LUNDAHL AND HOLLI TELFORD, APPELLANTS,

V.

BURTIS L. ROBERTS ET AL., APPELLEES.

Filed February 5, 2019.    No. A-17-1191.

Appeal from the District Court for Dawes County: TRAVIS P. O'GORMAN, Judge. Affirmed as modified.

Logan Lundahl and Holli Telford, appellants pro se.

Joe W. Stecher, of Skavdahl, Edmund & Stecher, for appellees.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Logan Lundahl and Holli Telford (collectively the Appellants) filed a complaint in the district court for Dawes County naming Burtis L. Roberts, Teresa Roberts, Burtis and Teresa as trustees of "the Family Trust," and Star Valley Storage, LLC (collectively the storage defendants), as well as Progressive Insurance Corporation and "[Does] Progressive Insurance employees," as defendants. The court granted a motion by the storage defendants and dismissed the case with prejudice. The court subsequently denied the Appellants' motion to alter or amend, and they perfected their appeal to this court. Because we find that the district court properly dismissed the action under the doctrine of forum non conveniens, we affirm the decision, as modified below.

- 1 -

BACKGROUND

On July 20, 2017, the Appellants filed a pro se complaint in the district court, alleging violations of several federal acts: the Racketeer Influenced and Corrupt Organizations (RICO) Act, Fair Credit Reporting Act (FCRA), and the Electronic Fund Transfers Act (EFTA). They also alleged state claims for replevin and return, wrongful conversion and trespass to chattel, invasion of privacy, unjust enrichment, breach of the covenant of good faith and fair dealing, and indemnification for personal injury. We discuss only those specific allegations of the Appellants' various claims as necessary to resolution of this appeal in the analysis section below. The complaint includes numerous footnotes and attached exhibits. It also includes a verification section, signed by Telford and Lundahl and notarized by "Marti Telford." We note that "Marti Telford" is a name associated with "Holli Telford" in other litigation. See *Lundahl v. Nar Inc.*, 434 F. Supp. 2d 855, 860 n.2 (D. Idaho 2006) ("[p]laintiff has employed numerous aliases in her past litigation, including but not limited to, H.M. Telford, M.H. Telford, Marti Telford, Holli Lundahl, H. Lundahl, H.T. Lundahl, Marti Lundahl, and Holly Mattie Telford").

In the "**PERSONAL JURISDICTION**" section of their complaint, the Appellants alleged that "[p]ersonal jurisdiction and venue exists in the state of Nebraska under RICO's nationwide contacts analysis under the 5th amendment due process clause" and because the storage defendants, alleged to be Wyoming residents, and the Progressive defendants, alleged to be "residents of the state of Nebraska under the doing business clause," "conspired to deprive plaintiff residents of their assets in the state of Nebraska thereby placing the focus of the conspiracy in this state." The Appellants also stated, "Furthermore 18 USC section 1965(a),[ ](b) and (d) provide for jurisdiction in this state."

We summarize the lengthy allegations in the "**GENERAL ALLEGATIONS**" section of the Appellants' complaint, beginning with the allegation that in October 2013, Telford entered into a contract with the storage defendants for rental of space in a parking lot at a location in Wyoming where she stored a motor home filled with "records and electronic devices." Apparently, the storage space was remote and inaccessible during winter except by foot and the storage defendants would only accept payment via check. The Appellants alleged that the rent checks, due every 6 months, were negotiated successfully until October 2016, at which time "the storage defendants intentionally withheld cashing [a rent check] so they could steal [the Appellants'] personal and legal properties . . . pursuant to a conspiracy with the [P]rogressive . . . defendants to destroy evidence." According to the Appellants' complaint, items stored in the motor home included "recordings of insurance contracts made over the phone" concerning a motorcycle insurance policy held by Lundahl.

With respect to an insurance coverage dispute between Lundahl and Progressive, the Appellants alleged that Lundahl entered into a contract with Progressive for certain insurance coverage, Lundahl recorded those conversations, Lundahl agreed that Progressive could automatically withdraw premium payments from his bank account, Lundahl provided his bank account and routing number to authorize these transfers, and Progressive withdrew monthly premiums from Lundahl's bank account pursuant to this arrangement. The Appellants alleged that

Lundahl was involved in a serious motorcycle accident in California in October 2015, Lundahl received $15,000, the "full policy limits" of the "minimal coverage" carried by the other driver involved in the accident, and Progressive resisted providing further coverage. The Appellants alleged that Progressive had "bait switched" Lundahl's insurance policy for one providing lower coverage at the end of January 2015 while "still charging [Lundahl] the same insurance premiums and withdrawing those premiums from [his] bank account."

The Appellants next alleged that Progressive agreed to settle Lundahl's demands for particular coverage if he would meet Progressive's adjuster at the storage facility in Wyoming and allow the adjuster to hear Lundahl's audio recordings of conversations with Progressive concerning "policy terms and authorized withdrawals." The Appellants alleged that Lundahl provided Progressive with the address of the Wyoming storage facility and that since Lundahl was non-ambulatory following his accident, he instructed Progressive to have the adjustor meet Telford there on September 21, 2016, so that Telford could "take the adjuster to the storage space and play the audios for the adjuster's benefit, and after which [Progressive] was to settle within the policy limits as promised." According to the Appellants, the adjuster never met Telford as arranged, and Lundahl subsequently called Progressive to complain about the failure to dispatch an adjuster and "to settle in good faith." The Appellants then set forth various allegations about Lundahl's contacts with Progressive, funds that were transferred from his bank account for the insurance policy that Progressive "fraudulently denied was in place 11 months after the accident took place - due to Progressive's fraudulent bait and switch scheme," and the financial losses allegedly suffered by Lundahl.

Next, the Appellants set forth the details of a rental and property dispute with the storage defendants. They alleged that Telford made payment to the storage defendants for the rent period from October 1, 2016, through April 30, 2017. They also alleged that Telford sent change of address notices to the storage defendants, ultimately indicating a change of address from Wyoming to Nebraska, and that in the process of attempting to locate an operational telephone number for the storage defendants, Telford made contact with Teresa. The Appellants alleged that Teresa "announced that she had repossessed [the] motor home for alleged failure to tender the October 2016 to April 2017 $84 rent payment." The Appellants further alleged that Teresa also informed Telford that she had paid a lock smith to break into the motor home, moved the motor home from the parking lot to "a secured location," conducted "a search and seizure of all of [the] personal records, computers, and electronic devices and removed them from the motor home to an undisclosed location," and had "conducted a repossession" of this property for nonpayment of rent. The Appellants then detailed further contacts between Teresa and Telford with respect to the rental payment/property dispute, including their allegation that during the "repeated arguments" between Telford and Teresa, Telford accused Teresa of conspiring with Progressive "to steal [the Appellants'] recording evidence against [Progressive] to obstruct [Lundahl's] claims against [Progressive] and [Telford's] claims against [Wells Fargo] in a case pending in Nebraska."

Finally, the Appellants set forth allegations, attempting to connect the insurance and rental/property disputes. They alleged that the Progressive adjuster who was supposed to meet Lundahl at the Wyoming storage facility in September 2016, "intentionally did not show up at that storage facility on this date because had had [sic] already conspired with Teresa to steal and spoil

[the Appellants'] evidence properties to prevents [sic] its use in [Lundahl's] multi million [dollar] case against [Progressive]." The Appellants also alleged that since "[Wells Fargo] is the storage defendants['] personal and business bank . . . [the Appellants'] properties were also stolen in violation of the H[obbs A]ct 18 USC 1951, remedial under RICO, to obstruct [Telford's] proof of claims against [Wells Fargo] bank pending in the state of Nebraska before the . . . Scottsbluff District Court." The Appellants alleged that Telford learned that the storage defendants reported her delinquent on her storage bill "to justify the wrongful conversion of [the Appellants'] properties," that she made demands to remove the "derogatory user credit report," which the storage defendants failed to do, and that Lundahl learned after he pulled a private credit report, that Progressive had made "numerous hard pull towards [Telford's] credit without consent", making both sets of defendants liable under the FCRA.

In their request for recovery, the Appellants sought (1) compensatory and general damages allowed by law for all of their tort claim; (2) treble damages against Progressive of $3,750,000, treble damages against the storage defendants of $85,000, and "preservation of any future claims against the storage defendants and other tortfeasors whose evidence may have been spoiled by the storage defendants['] recent tortious conduct;" (3) any other equitable and legal relief the court deemed fair and reasonable; (4) indemnification of Lundahl's personal injuries in the amount of $19 million; (5) attorney fees and costs if the case went to trial; (6) trial by jury; and (7) "pre and post judgment interest at the contract rate of 10% per annum as provided under Wyoming law."

SERVICE AND APPEARANCE OF STORAGE DEFENDANTS

On August 16, 2017, praecipes for summons and summonses for service by certified mail upon Burtis and Teresa at an address in Etna, Wyoming were filed in the district court. The summonses reflect an address for Lundahl in Gordon, Nebraska, and identify the plaintiffs as "Logan Lundahl" and "Holli Telford." The praecipes for summons contain the name "HOLLI LUNDAHL" in the blank for the name of "Plaintiff." The record on appeal does not include any other praecipes for summons or summonses, nor any return receipts.

On September 5, 2017, the storage defendants' attorney filed a special appearance for motion to dismiss, asking the district court to dismiss the Appellants' causes of action against the storage defendants "with prejudice" because (1) the complaint fails to state a claim upon which relief can be granted "against any named defendants," (2) the court is an inconvenient or improper forum for "any claims" alleged in the complaint, (3) the Appellants' causes of action have no relationship or nexus with Dawes County, (4) the complaint and "inappropriate footnotes" are "nonsensical," and (5) the court has no personal jurisdiction over the storage defendants. Also on September 5, the storage defendants' attorney filed a notice of hearing, giving notice that a hearing on the motion to dismiss had been set for September 12. Both the special appearance pleading and the notice of hearing included certificates of service, stating that copies of the respective documents had been mailed to the Appellants "by United States mail, postage prepaid" at the same address in Gordon, Nebraska as was listed in the praecipes for summons issued by the Appellants.

DISMISSAL OF CASE

No bill of exceptions was filed in this case, so we do not have a record of any hearing held on the storage defendants' motion to dismiss, but on September 13, 2017, the district court entered an order granting the motion to dismiss. The court indicated that a hearing had been held on the storage defendants' special appearance for motion to dismiss, that the storage defendants had appeared through counsel, and that the Appellants had not appeared at the hearing. In granting the dismissal, the court stated:

> The Court finds that this Court lacks jurisdiction over this action. None of the facts alleged in the Complaint involve any acts in the State of Nebraska. All Defendants are residents of states other than Nebraska. The allegations are frivolous and the Complaint fails to state a cause of action.
>
> The Motion to Dismiss is granted. [The Appellants'] action is dismissed with prejudice. [The Appellants are] prohibited from filing any further pleadings in this Court without the assistance of duly licensed counsel.

POSTJUDGMENT PROCEEDINGS

On September 25, 2017, the Appellants filed a motion to alter or amend the judgment. We note that September 23 (the tenth day after entry of the district court's September 13 order) was a Saturday, and thus, contrary to the storage defendants' argument in their brief on appeal, this motion was timely. See Neb. Rev. Stat. § 25-1329 (Reissue 2016) (motion to alter or amend judgment shall be filed no later than ten days after entry of judgment); Neb. Rev. Stat. § 25-2221 (Reissue 2016) (concerning computation of time when last day of designated period falls on Saturday or Sunday). In their motion, the Appellants alleged that (1) their absence from the hearing on the storage defendants' motion to dismiss was "procured by extrinsic fraud," (2) the court's dismissal order did not reflect the correct analysis of personal jurisdiction with respect to their RICO and transitory tort claims, (3) the court's finding that their action was frivolous was void giving the court's finding of no personal jurisdiction, (4) the storage defendants made a general appearance when they failed to dismiss the other allegations of their pleading once the court granted dismissal based on the lack of personal jurisdiction, (5) the court erred by entering "**a Filing Injunction**" against them without notice and an opportunity to defend, (6) the case should be assigned to a different judge based on the court's "**Pervasive Bias**" and "**Advocacy in Favor Of Defendant Parties**," (7) Progressive defaulted by failing to appear and respond and the court was without authority to waive that default, and (8) a new hearing should be scheduled after recusal. (Emphasis in original.) For these reasons, the Appellants sought "to alter or amend the judgment by vacating same, starting the case anew and allowing [them] to file an amended complaint based on changed circumstances." Also on September 25, the Appellants filed a separate motion asking the court to grant a default judgment against Progressive due to its failure to appear or answer.

On October 18, 2017, the district court entered an order denying the Appellants' motion to alter or amend and their request for recusal, stating that "[j]urisdiction is entirely lacking in this

matter." The court's order did not address the motion for default judgment filed by the Appellants with respect to Progressive. The Appellants subsequently perfected their pro se appeal to this court.

## ASSIGNMENTS OF ERROR

The Appellants assert, restated and reordered, that the district court erred in (1) finding no jurisdiction, (2) dismissing the action with prejudice, (3) entering a prefiling order that was overbroad and was void for lack of notice and lack of opportunity to defend, (4) failing to grant their request for recusal, and (5) finding that their claims were frivolous and lacked merit after finding that the court lacked jurisdiction over all of the defendants.

## STANDARD OF REVIEW

In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018).

Whether a suit should be entertained or dismissed under the rule of forum non conveniens depends largely upon the facts of the particular case and rests in the discretion of the trial court. *Christian v. Smith*, 276 Neb. 867, 759 N.W.2d 447 (2008).

## ANALYSIS

### JURISDICTION

The Appellants first assert that the district court erred in finding that it lacked jurisdiction over the action. In their special appearance for motion to dismiss, the storage defendants alleged, among other things, that the district court was an inconvenient or improper forum for any of the claims alleged in the complaint. In its order granting the dismissal, the district court stated "None of the facts alleged in the Complaint involve any acts in the State of Nebraska."

The doctrine invoked by the storage defendants, and applied by the district court, in part, is commonly referred to as "forum non conveniens." Neb. Rev. Stat. § 25-538 (Reissue 2016) provides, "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just." The Nebraska Supreme Court has explained that the doctrine of forum non conveniens (literally, "an unsuitable court") provides that a state will not exercise jurisdiction if it is a seriously inconvenient forum for the trial of the action, provided that a more appropriate forum is provided to the plaintiff. *Ameritas Invest. Corp. v. McKinney*, 269 Neb. 564, 694 N.W.2d 191 (2005). The doctrine of forum non conveniens refers to the discretionary power of a court to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. *Id.* The doctrine can be invoked sua sponte by the court on its own motion. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). See, also, *Estate of Thompson v. Toyota Motor Corp.*, 545 F.3d 357 (6th Cir. 2008); *Wilburn v. Wilburn*, 192 A.2d 797 (D.C. 1963).

The doctrine of forum non conveniens involves a balancing of conveniences and results in dismissal when the court finds that substantial justice dictates that the matter should be heard in another forum. See *Qualley v. Chrysler Credit Corp.*, 191 Neb. 787, 217 N.W.2d 914 (1974). As

the Nebraska Supreme Court noted in *Ameritas Invest. Corp. v. McKinney, supra*, a plaintiff's choice of a forum should not be disturbed except for weighty reasons, and only when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's convenience, or when the forum is inappropriate because of considerations affecting the court's own administrative and legal problems. The trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, the ability to secure attendance of witnesses through compulsory process, and the advantages of having trial in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. *Id.* See, also, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (holding "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant").

In the case at hand, as we decipher their complaint, and viewing the facts in the light most favorable to the Appellants, the Appellants assert that the storage defendants failed to accept the rental payments made by Appellants on their storage facility in Wyoming and thereafter wrongfully removed the Appellants' property from storage and destroyed it. As to Progressive, the Appellants assert that Progressive conspired with the storage defendants to destroy Progressive's records that were contained in the Wyoming storage facility, which records allegedly pertained to an accident that occurred in California and Progressive's alleged wrongdoing in providing insufficient insurance coverage to Lundahl for that accident. None of the alleged facts constitute the basis for claims occurring anywhere in this state.

Thus, regardless of whether the district court had subject matter jurisdiction over the case and personal jurisdiction over the defendants was present in this case, which we need not decide, we find that the district court did not abuse its discretion in dismissing the complaint under the rule of forum non conveniens.

DISMISSAL WITH PREJUDICE

The Appellants assert that the district court erred dismissing the action with prejudice.

A dismissal without prejudice means that another petition may be filed against the same parties upon the same facts as long as it is filed within the applicable statute of limitations. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). A dismissal with prejudice operates as a rejection of the plaintiff's claims on the merits and claim preclusion bars further litigation. *Id.*

Section 25-538 allows a court to dismiss an action "on any condition that may be just." Here, it is clear that the Appellants' claims do not belong in a Nebraska court. However, we hold that the court's order does not preclude the Appellants from filing this action in an appropriate forum. We modify the court's order to limit the dismissal with prejudice to any further actions on these claims in Nebraska.

The Appellants assert that the district court erred in entering a prefiling order that was overbroad and was void for lack of notice and lack of opportunity to defend. They also argue that they are "financially challenged" and cannot afford an attorney. Brief for appellants at 28. We assume the Appellants are referring to the statement in the court's order that "[the Appellants] [are] prohibited from filing any further pleadings in this Court without the assistance of duly licensed counsel."

It is the court's duty to prevent frivolous proceedings in the administration of justice. *Cole v. Blum*, 262 Neb. 1058, 637 N.W.2d 606 (2002); *State ex rel. Tyler v. Douglas Cty. Dist. Ct.*, 254 Neb. 852, 580 N.W.2d 95 (1998). See, also, *Aetna Cas. & Surety Co. v. Dickinson*, 216 Neb. 660, 345 N.W.2d 8 (1984) (it is duty of courts to prevent abuse of process, unnecessary delays, and dilatory and frivolous proceedings in administration of justice). A frivolous legal position is one wholly without merit, that is, without rational argument based on the law or on the evidence. *Dortch v. City of Omaha*, 26 Neb. App. 244, 918 N.W.2d 637 (2018).

While there is a generally recognized constitutional right of access to the courts, courts can place restrictions on such access in order to prevent the abuse of the judicial process, to avoid unnecessary delay in the prosecution of actions, and to guard against actions that are frivolous or malicious. *State ex rel. Tyler v. Douglas Cty. Dist. Ct., supra.* The state's interest in not allowing frivolous or malicious litigation in its courts is constitutionally paramount to a plaintiff's desire to pursue such litigation. *Id.*

The propensity for frivolous and vexatious litigation of one of the appellants in this case, Telford, has been the subject of numerous court orders limiting her access to both state and federal courts, including the Unites States Supreme Court. See *Noble v. American Nat. Property. & Cas. Ins. Co.*, 297 F. Supp. 3d 998 (D. S.D. 2018); *Nelson v. Mountain West Farm Bureau Mut. Ins. Co.*, 209 F. Supp. 3d 1130 (D. Neb. 2016). Telford is also known to have employed numerous aliases in past litigation. See *Lundahl v. Nar Inc.*, 434 F. Supp. 2d 855, 860 n.2 (D. Idaho 2006). We also note that the record in the present case alludes to at least two other cases in Nebraska involving Telford. The complaint references Telford's "claims against WELLS FARGO in a case pending in Nebraska." And, in their motion to alter or amend, the Appellants refer to litigation in Sioux County, Nebraska. However, there is nothing in the present record or the district court's order of September 13, 2017, to show why the particular prefiling restriction imposed in this case was necessary.

The record on appeal does not show that the Appellants have brought successive vexatious lawsuits involving the same issues against the same parties, here in Nebraska, such that they should be prohibited from filing any further pleadings in the district court for Dawes County without the assistance of duly licensed counsel. See *Nuttelman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988). We also note that while the record shows that they are proceeding in forma pauperis on appeal, there is nothing in the record to show that they proceeded in forma pauperis below or that they have abused this privilege. In forma pauperis access to the courts is not a matter of right, but a privilege, and abuse of such privilege should not and will not be permitted. *State ex rel. Tyler v. Douglas Cty. Dist. Ct., supra* (trial court's order limiting number of pleadings litigant could file

per month while proceeding in forma pauperis and representing himself did not unreasonably restrict litigant's access to courts). Finally, there is no indication in the record that the Appellants had notice that the court was considering the imposition of a prefiling restriction against them. The prohibition in this case against "filing any further pleadings in this Court [district court for Dawes County] without the assistance of duly licensed counsel is overly broad and, based on the record before us, unwarranted at this point. We modify the court's September 13, 2017, order to eliminate the prefiling restriction.

RECUSAL

The Appellants assert that the district court erred in failing to grant their request for recusal. Due process requires a neutral, or unbiased, adjudicatory decisionmaker. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012). Such decisionmakers serve with a presumption of honesty and integrity. *Id.* A party seeking to disqualify an adjudicator because of bias or prejudice bears the heavy burden of overcoming the presumption of impartiality. *Id.* A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Kalkowski v. Nebraska Nat. Trails Museum Found.*, 290 Neb. 798, 862 N.W.2d 294 (2015).

In support of their assignment of error, the Appellants, cite to various propositions of law, but they do little to explain why the district court should have granted their request for recusal in this case. Their only substantive argument is as follows:

This action as evolved shows that [the trial judge] became entwined in the conspiracy initiated by Progressive and continued by the storage defendants, when he used his office for illicit purposes to forever judicially bar [the Appellants'] rights to seek remedies against the offending parties with his decision[]making role to construct a final decision that he knew mis[s]tated the law and facts presented by [the Appellants'] complaint, he intentionally covered up the fraud committed by the storage defendants['] attorney, and he became embroiled in a running and bitter controversy with [the Appellants] which clearly resulted in arbitrary orders.

Brief for appellants at 30.

The Appellants' arguments are largely comprised of conclusory statements, and they have failed to provide any evidence to support their assertions. The gist of their argument appears to be that the trial judge is biased because he made unfavorable rulings against them. When reviewing the decision of a lower court, an appellate court may consider only evidence included within the record. *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993). We observe that a party's brief may not expand the evidentiary record. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017). And, with respect to recusal, the U.S. Supreme Court has stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). See, also, *Huber v. Rohrig*, 280 Neb. 868, 791 N.W.2d 590 (2010) (allegations of unfavorable rulings alone almost never establish that judge should be recused). The Appellants'

arguments do not demonstrate that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness. We find no abuse of discretion in the district court's denial of their request for recusal.

REMAINING ASSIGNMENT OF ERROR

We need not address the Appellants' remaining assignment of error asserting that the district court erred in finding that the claims were frivolous and lacked merit given our conclusion that the court was correct in dismissing the action on the basis of forum non conveniens. See *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018) (appellate court is not obligated to engage in analysis which is not needed to adjudicate controversy before it).

CONCLUSION

We find no abuse of discretion in the district court's dismissal of Appellants' complaint on the basis of forum non conveniens. However, we modify the court's order to limit the dismissal with prejudice to any further actions on these claims in Nebraska. We further modify the court's September 13, 2017 order to eliminate the prefiling restriction which prohibits the Appellants from filing any further pleadings in the Dawes County District Court without the assistance of duly licensed counsel. Finally, we find no abuse of discretion in the denial of the Appellants' request for recusal.

AFFIRMED AS MODIFIED.